UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| R A C M L L C | CASE NO. 2:21-CV-03580 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| GLAD TIDINGS ASSEMBLY OF GOD CHURCH OF LAKE CHARLE | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court are two motions: (1) Motion for Summary Judgment (Docs. 22 and 50) filed by Glad Tidings Assembly of God Church of Lake Charles ("Glad Tidings") and (2) Motion for Summary Judgment (Docs. 24 and 51) filed by RACM, LLC d/b/a ServPro of Saginaw ("ServPro"). The two motions were originally filed as Motions to Dismiss, but because the parties were relying on evidence and/or exhibits outside of the pleadings, the Court converted the motions to motions for summary judgment.[1]

## PROCEDURAL HISTORY

ServPro filed its original Complaint for breach of contract and open account. Due to the allegations in the Complaint, and pursuant to a Rule 12(b)(6) motion filed by Glad Tidings, this Court dismissed the breach of contract because ServPro was not a licensed contractor in the state of Louisiana as required by Louisiana revised Statutes 37:2160(A) and 37:167(A) when it executed that Contract. This ruling was based solely on the allegations in the Complaint.

---

[1] See Doc. 49.

While the Motion to Dismiss was pending, ServPro filed an Amended Complaint and asserted additional promissory estoppel/detrimental reliance and unjust enrichment claims.[2] After the Amended Complaint was filed, Glad Tidings filed a second Rule 12(b)(6) Motion to Dismiss to dismiss the promissory estoppel/detrimental reliance and unjust enrichment claims.[3] ServPro also filed a Motion for Reconsideration of the Court's dismissal of its breach of contract claim.[4] ServPro then filed a Motion for Leave to Amend the Amended Complaint (with opposition).[5] The Magistrate Judge granted the Motion to Amend.[6]

Glad Tidings appealed the Magistrate Judge's decision to grant the Motion for Leave to Amend.[7] This Court denied the appeal and converted ServPro's Motion for Reconsideration and Glad Tiding's Motion to Dismiss to Motions for Summary Judgment.[8] The Court set deadlines for the parties to submit briefs, summary judgment evidence and set the matter for hearing.

## FACTUAL STATEMENT

On or about August 27, 2020, Hurricane Laura made landfall causing significant storm and water damage to Defendant, Glad Tidings Church and Daycare.[9] In its Original Complaint, Plaintiff alleged the following: On September 5, 2020, Glad Tidings and Plaintiff, ServPro, executed a contract titled "Extreme Team Saginaw Authorization and

---

[2] Doc. 10.
[3] Doc. 22.
[4] Doc. 24.
[5] Doc. 28.
[6] Doc. 43.
[7] Doc. 45.
[8] Doc. 49.
[9] Plaintiff's Amended Complaint, ¶ 6, Doc. 10.

Service Contract" ("Contract") for carpet removal, drywall work, contents storage and disposition, ceiling tile and grid removal, pew removal, glue removal, woodwork, air scrubber usage, water remediation, structural drying, and selective demolition.[10]

ServPro commenced work at the Church and Daycare on September 7, 2020; the work was substantially completed on or about September 30, 2020.[11] On December 14, 2020, Glad Tidings paid ServPro $1,500,000.[12] On December 17, 2020, ServPro presented Glad Tidings two invoices: (1) Glad Tidings Preschool-Lake Charles, La for $1,242,543.87[13] and (2) Glad Tidings Church for $3,862,378.98.[14] Both invoices were due February 1, 2021.[15] Glad Tidings has refused to pay ServPro any further payments despite having received from its insurer's third-party administrator, Sedgwick, payments for ServPro's invoices, as adjusted by Sedgwick.[16]

The Contract set forth the Scope of Work as follows:

> 23. Scope of Work: Mitigation & Reconstruction of the Glad Tidings Church (3501 Texas St) and the Glad Tidings Preschool Center (3400 Texas St) after Hurricane Laura. Worship Center Building: Mitigation of worship center building (including office & nursery spaces) Dehumidification + Drying of interior items (walls, carpet, pews, etc.). Removal of water-affected elements (sheetrock, insulation, ceiling tiles, carpet) Preschool Building: Same as above. **SELF-PAY** Customer must approve before all work is started **Customer is tax-exempt** --KP[17]

---

[10] Id. ¶ 6.
[11] Id. ¶ 7.
[12] Doc. 28-3, ¶ 29.
[13] Plaintiff's exhibit G, doc. 28-3.
[14] Plaintiff's exhibit H..
[15] Id.
[16] Id. ¶¶ 13-14.
[17] Defendant's exhibit A, Doc. 11-2, p. 1.

ServPro did not possess a contractor's license issued by the state of Louisiana on September 5, 2020.[18]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

---

[18] Doc. 11-1, p. 6.

133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Glad Tidings contends that the Contract is null and void because it involved more than water remediation/dewatering, and ServPro was not a licensed Louisiana contractor at the time it executed the Contract. Thus, Glad Tiding argues that the Court must uphold its prior ruling dismissing the breach of contract claim. Glad Tidings also moves to dismiss ServPro's promissory estoppel/detrimental reliance claim. Glad Tidings concedes that ServPro's unjust enrichment claim is viable.[19]

ServPro moves to reinstate the breach of contract claim and/or that at minimum, there is a genuine issue of material fact as to the breach of contract claim. ServPro also defends its promissory estoppel/detrimental reliance and unjust enrichment claim.

*Breach of Contract claim*

The basis of ServPro's motion is that the facts reveal that the scope of work under the Contract was purely water remediation. Consequently, the exception for the requirement of a Louisiana contractor's license applies, and thus, the breach of contract claim should be reinstated. Glad Tidings relies solely on the language provided in § 23 of

---

[19] Memorandum in Support of Defendant's Motion for summary Judgment, Doc. 50, p. 13.

the Contract as to the scope of work to be performed by ServPro.[20] Specifically, the term "Reconstruction", and the phrase that ServPro was "to act as contractor and furnish all labor, materials, equipment."[21] Glad Tidings argues that ServPro represented itself as the contractor, and further relies on the term "contractor" as defined in Louisiana Revised Statute § 37:2150.1(4)(a), which is as follows:

> [A]ny [juridical or natural] person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any . . . construction undertaking for which the entire cost is fifty thousand dollars or more when the property is to be used for commercial purposes.[22]

Glad Tidings argues that a plain reading of the Contract's Scope of Work unequivocally indicates services facilitating the reconstruction of the property were to be part of the services rendered by Plaintiff, and the reconstruction is clearly beyond the "scope of services included in dewatering." As noted by ServPro, Glad Tidings submits no summary judgment evidence to support their contention that the scope of work included something other than dewatering/water remediation.

ServPro maintains that it was not required to have a Louisiana contractor's license because the scope of work at the Church and Daycare did not include construction, but only water remediation. At the very least, ServPro contends that there is a genuine issue of material fact for trial as to the scope of work. ServPro argues that the term "Reconstruction"

---

[20] Defendant's exhibit A, Doc. 11-2, p. 1.
[21] Id.
[22] Id.

in the Contract, used only once, does not equate to finding that the actual scope of work performed is a construction contract.

First ServPro points out that counsel for Glad Tidings filed another lawsuit in this Court against its insurer, Underwriters at Lloyd's, London ("London suit")[23] regarding the same Contract here and alleged that the Contract with ServPro was for "water mitigation." In the London suit, Glad Tidings did not allege that the scope of work or character of work performed under the Contract was for anything other than water remediation.

Next, ServPro submits the affidavit testimony of the executive director of the Louisiana States Licensing Board of Contractors ("LSLBC"), Michael McDuff, who after reviewing the Contract, concluded that the scope of work identified in the agreement is classified as "dewatering" work, per LSLBC standards, and such "dewatering" work did not require a license to contract under the LSLBC licensure requirements.[24]

ServPro also submits the affidavit of Kendra Patocki, ServPro's Sales and Marketing Manager,[25] wherein Patocki testified that she participated in a walk-through of defendant's building with Mike Kane, Glad Tidings' board member and project manager. During the walk-through, Kane addressed the possibility of a subsequent rebuild contract after completion of the dewatering/water mitigation contract. Patocki informed Kane that ServPro did not have a contractor's license and would need to obtain one for the subsequent

---

[23] Plaintiff's exhibit A, *Glad Tidings Assembly of God Church of Lake Charles v. Underwriters at Lloyd's, London (Lloyd's of London)*, Civil Action 2:21-720, filed 3/18/2021.
[24] Plaintiff's exhibit B, Doc. 24-1, p. 10.
[25] Plaintiff's exhibit C.

rebuild contract, to which Kane replied that they would revisits the subsequent rebuild contract at a later time.

Patocki also testified that Kane, along with Defendant's attorney Galen Hair, declined the first two drafts of the Contract and subsequently dictated the exact language to be inserted in § 23 of the Contract. Hence, ServPro notes that Louisiana jurisprudence requires that any doubt or ambiguity as to the meaning of a contract provision must be eliminated by interpreting the contract against the party who prepared the text. *See i.e., Ouachita Nat. Bank in Monroe v. Williamson*, 383 So.2d 172 (La.App. 2d Cir. 1976); *Sabine Const. Co., Inc. v. Cameron Sewerage Dist. No. 1*, 298 So.2d 319 (La.App. 3d Cir. 1974). ServPro reiterates that Glad Tidings has submitted no evidence to show that any "reconstruction" work was performed by ServPro. Thus, ServPro contends that it has unequivocally set forth a viable breach of contract claim, including an evidentiary basis for each element: 1) evidence of the validity of the contract; 2) evidence of defendant's breach; and 3) evidence of damages suffered by ServPro.

The Court agrees with ServPro that the breach of contract claim must be reinstated due to Glad Tiding's lack of response and submission of summary judgment evidence to create a genuine issue of material fact for trial as to the scope of work performed by ServPro under the Contract. Also, the undisputed summary judgment evidence establishes that the Contract as preformed was solely for water remediation/dewatering.

*Promissory estoppel/detrimental reliance claim*

ServPro contends that if the Court either finds that there is a genuine issue of material fact for trial as to its breach of contract claim, or reinstates the breach of contract

claim, then dismissal of its promissory estoppel/detrimental reliance claim must likewise be denied. Because the Court finds that ServPro was not required to have a contractor's license, and the breach of contract claim will be reinstated, the Court will not dismiss the promissory estoppel/detrimental reliance claim.

## CONCLUSION

For the reasons set forth above, the Court will grant ServPro's Motion for Summary Judgment, and reinstate ServPro's breach of contract claim. The Court will deny Glad Tiding's Motion for Summary Judgment.

**THUS DONE AND SIGNED** in Chambers this 8th day of August, 2022.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**