UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**R A C M L L C**                                   **CASE NO. 2:21-CV-03580**

**VERSUS**                                          **JUDGE JAMES D. CAIN, JR.**

**GLAD TIDINGS ASSEMBLY OF GOD**                    **MAGISTRATE JUDGE LEBLANC**
**CHURCH OF LAKE CHARLE**

### MEMORANDUM RULING

Before the Court is "Plaintiff's Motion for Partial Summary Judgment as to Validity of Contract" (Doc. 87) wherein RACM, LLC d/b/a ServPro of Saginaw ("ServPro") moves to have the Court validate its contract that is the subject of this litigation. ServPro requests that the Court issue a ruling that its contract with Defendant, Glad Tidings Assembly of God Church of Lake Charles ("Glad Tidings") is not a construction contract, and therefore it was not required to hold a license from the Louisiana State Licensing Board of Contractors.

### FACTUAL STATEMENT

On September 5, 2020, RACM and defendant executed a contract, entitled Extreme Team Saginaw Authorization and Service Contract (the "Contract").[1] The "Scope of Work" set forth in Section twenty-three (23) of the contract reads as follows:

> 23. Scope of Work: Mitigation & Reconstruction of the Glad Tidings Church (3501 Texas St) and the Glad Tidings Preschool Center (3400 Texas St) after Hurricane Laura. Worship Center Building: Mitigation of worship center building (including office & nursery spaces) Dehumidification + Drying of interior items (walls, carpet, pews, etc.). Removal of water-affected elements (sheetrock, insulation, ceiling tiles,

---
[1] Doc. 11-2.

carpet) Preschool Building: Same as above. **SELF-PAY** Customer must approve before all work is started. **Customer is tax-exempt** --KP.

Kendra Patocki ("Patocki"), RACM's Sales and Marketing Manager, declared in her affidavit that she negotiated the terms of the contract with defendant's project manager and Board of Deacons member Mike Kane ("Kane"), along with defendant's attorney Galen Hair ("Hair"). Kane and Hair dictated, prepared, and emailed to Patocki for inclusion the controversial contract language contained in Section 23 (Scope of Work), the section in which the word "reconstruction" appears once.[2] This term does not appear elsewhere in the contract.

Patocki and her coworkers participated in a walk-through of defendant's buildings that had incurred hurricane damage. At that time, Kane addressed the possibility of a subsequent rebuild contract after completion of the dewatering/water mitigation contract. Glad Tidings hired another company for the restoration/rebuild job.[3]

The Executive Director of the Louisiana State Licensing Board of Contractors ("LSLBC"), Michael B. McDuff ("McDuff"), submitted an affidavit stating that "LSLBC does not require a Louisiana Commercial Contractor's license, Residential Contractor's license, or Home Improvement Registration to be obtained for 'dewatering' to be completed in Louisiana."[4] After examining the Contract, McDuff concluded that the "scope of work identified as 'Mitigation of worship center building (including office & nursery spaces) Dehumidification + Drying of interior items (walls, carpet, pews, etc.). Removal of water-affected elements (sheetrock, insulation, ceiling tiles, carpet) Preschool

---

[2] Plaintiff's exhibit A., Doc. 28-3.
[3] *Id.*
[4] Doc. 24-1.

Building: Same as above.' from paragraph 23 from Servpro's Extreme Team Saginaw Authorization and Service Contract would be considered 'dewatering'."[5]

On December 17, 2020, ServPro submitted its Glad Tidings Preschool-Lake Charles, LA invoice for payment for $1,242,543.87 and its Glad Tidings Church invoice for a total of $3,862,378.98. The invoices contained blue hyperlinks to support its costs.[6] On December 14, 2020, Glad Tidings wired $1,500,000 and offered $2,500,000 to resolve the remaining invoice amount. ServPro rejected the offer.[7] ServPro provided Glad Tidings a daily burn rate of $230,048.00 and rendered services for 14 days.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead,

---

[5] *Id.* ¶ 6.
[6] Plaintiff's exhibit G, doc. 28-3.
[7] Doc. 28-3, ¶ 29.

the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

ServPro argues that the above-mentioned contract was solely for dewatering/water mitigation, which did not require ServPro to hold a construction license, whereas Glad Tidings argues that the contract was a construction contract, which is an absolute nullity because ServPro did not hold a construction license when the parties executed the contract.

Pursuant to a motion for summary judgment filed by Glad Tidings, this Court denied Glad Tiding's request to dismiss ServPro's breach of contract, specifically finding that "the undisputed summary judgment evidence established that the contract as

performed was solely for water remediation/dewatering."[8] ServPro asserts that Glad Tidings has failed to establish otherwise, despite the extensive discovery in this case.

Glad Tidings remarks that the services provided by ServPro included the demolition, removal and teardown of the building's component parts, such as ceiling tiles, flooring, carpet, baseboards, cabinets, and walls, as well as cleaning and sanitizing the floors and studs, and furnishing and installing drying equipment and air scrubbers.[9] Thus, Glad Tidings argues that because at the time the contract was executed, ServPro was not a Louisiana licensed contractor, the contract is null and void. Consequently, Glad Tidings again argues that ServPro does not have a breach of contract claim.

Louisiana Revised Statute 37:2163(A)(1) provides that "[i]t shall be unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor in accordance with the provisions of this Chapter." A "contractor" is defined as:

> [A]ny person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, furnishing labor, or furnishing labor together with material or equipment, or installing material or equipment for any . . . building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking for which the entire cost is fifty thousand dollars or more when the property is to be used for commercial purposes.

---

[8] Doc. 52.
[9] Defendant's exhibit A, ¶ 23; Doc. 87-11.

Louisiana Revised Statute 37:2150.1(4)(a). A contract made with an unlicensed contractor is an absolute nullity. Louisiana Civil Code article 2033; *Quatermary Res. Investigations, LLC v. Phillips*, 316 So.3d 448, 459 (La.App. 1 Cir. 11/19/20) ("Any contract made in violation of the Contractors Licensing Law is null and void.")

However, dewatering and mitigation work does not require a license to be issued from the LSLBC.

Glad Tidings relies upon *CCAPS, LLC v. HD Associates, LLC*, 2023 U.S. Dist. LEXIS 23590, *15-16 (E.D. La. 2/13/2023) wherein Judge Vitter found that prior to the August 1, 2022, amendments,[10] an emergency cleaning and/or mitigation services contract was not statutorily exempted from, *inter alia,* the definition of "contractor" under § 2150.1(4)(a). In *CCAPS,* Judge Vitter held that the work performed constituted an "alteration" and a "tearing down", two terms included in the definition of a "contractor."

Glad Tidings argues that because ServPro performed demolition and tear down services by tearing out all of the sheetrock, cabinetry, and flooring and installing its equipment (air movers and dehumidifiers) to remove moisture from the property, ServPro fit within the definition of a contractor. Glad Tidings notes that Judge Vitter chose not to rely on the Louisiana State Licensing Board for Contractor's ("LSLBC") website, which expressly states that "water extraction, carpet removal, and damaged drywall removal do not require a license from LSLBC."

---

[10] On August 1, 2022, La.R.S. § 37:2157 was amended to expressly exempt "dewatering or water mitigation from the provisions of Part I of Chapter 24 governing the law of contractors in Louisiana. See 2022 La. See. Law Serv. Act 195.

Of significance to this Court is that every water/mitigation service will inherently include tearing down dry wall, and some type of demolition, which would make every water/mitigation contract subject to Louisiana's construction contractor's licensing requirement. As such, that would directly contravene Louisiana's law that exempts water/mitigation services from the licensing requirement.

Additionally, there is no factual dispute that Kendra Patocki, ServPro's Sales and Marketing Manager, rejected Glad Tiding's project manager, Mike Kane's offer for the rebuild contract because ServPro did not have a contractor's license. Kane testified that there were three phases to restore the Church properties: (1) phase one—leak proofing the main building's roof; (2) phase two—remediation to restore the building to a state where a contractor could restore the building to its pre-storm state; and (3) phase three-rebuild. Kane further testified that ServPro was hired to get the property "dry", or to prepare the assets for restoration, which included drying, removal of water, removal of flooring and sheetrock and temporary storage of items.[11] Kane testified that ServPro was hired to complete phase two of the project.[12] Additionally, the Church minutes reflect that ServPro was hired to be the mitigation company.[13] Glad Tidings' Board of Deacons member/officer, Henry Gorman, hand wrote "mitigation" as the service provided by ServPro on the "Certificate of Satisfaction,".[14] Finally, the August 18, 2016, LSLBC website expressly states that "dewatering mitigation" work does not require a license to

---

[11] Plaintiff's exhibit C, Mike Kane deposition, pp. 64-66.
[12] *Id.* p. 97.
[13] Plaintiff's exhibit D, § 11.2.
[14] Plaintiff's exhibit F, attachment, Certificate of Satisfaction, p. 249, Doc. 87-20.

be issued from LSLBC to lawfully contract for and perform.[15] Nor, can the Court ignore that Glad Tidings chose another contractor for the rebuild of the Church.[16]

The goal of contract interpretation is to determine "the common intent of the parties." Louisiana Civil Code article 2045. As noted by ServPro, counsel for Glad Tidings provided the language in § 23—Scope of Work and therefor to the extent there is any doubt or ambiguity as to its meaning, the contract will be interpreted against the party who prepared the text. See e.g., *Ouachita Nat. Bank in Monroe v Williamson*, 383 So.2d 172 (La. App. 2d Cir. 1976); *Sabine Const. Co., Inc. v. Cameron Sewerage Dist. No. 1*, 298 So.2d 319 (La. App. 3d Cir. 1974).

The Court finds that the subject contract was a dewatering/water mitigation contract and therefore, ServPro was not required to hold a license pursuant to the LSLCB.

## CONCLUSION

For the reasons explained herein, Plaintiff's Motion for Partial Summary Judgment as to Validity of Contract (Doc. 87) will be granted.

**THUS DONE AND SIGNED** in Chambers on this 12th day of April, 2024.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[15] https://lslbc.louisiana.gov/faq/does-dewatering-required-a-license-from-lslbc/. The website states:
    Q. Does dewatering require a license from LSLBC?
    A. Water extraction, carpet removal, damaged drywall removal do NOT require a license from LSLBC.
[16] Plaintiff's exhibit A, Affidavit of Kendra Patocki, § 11.